**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DISTEFANO PATENT TRUST III, LLC, | : |
| Plaintiff, | : |
| v. | : C.A. No. 17-1798-LPS-CJB |
| LINKEDIN CORPORATION, | : |
| Defendant. | : |

## MEMORANDUM OPINION

Timothy Devlin, DEVLIN LAW FIRM LLC, Wilmington, DE

    Attorney for Plaintiff DiStefano Patent Trust III, LLC


Jack B. Blumenfeld, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Robert T. Cruzen, Sarah E. Jelsema, Andrew M. Mason, Todd M. Siegel, KLARQUIST SPARKMAN LLP, Portland, OR

    Attorneys for Defendant LinkedIn Corporation


September 28, 2018
Wilmington, Delaware

**STARK, U.S. District Judge:**

Plaintiff DiStefano Patent Trust III, LLC ("Plaintiff" or "DiStefano") asserts that Defendant LinkedIn Corporation ("Defendant" or "LinkedIn") infringes DiStefano's U.S. Patent No. 8,768,760 (the "'760 patent"), entitled "Reciprocal Linking Arrangement between Web Pages." (D.I. 11 at 2-3) LinkedIn has filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that the '760 patent fails to claim patent-eligible subject matter under 35 U.S.C. § 101. (D.I. 12) The parties submitted briefing (D.I. 13, 16, 18) and the Court heard oral argument on July 31, 2018 (*see* D.I. 25) ("Tr."). For the reasons stated below, the Court will grant LinkedIn's motion to dismiss.

## I. BACKGROUND

There '760 patent relates to "developing web pages through the use of a graphical user interface." '760 Pat. at 1:25-26. Specifically, the patent describes a method of creating a reciprocal arrangement between two websites in order to market the first website at the second website. *See id.* at 3:12-28.

DiStefano contends LinkedIn infringes claims 1, 4, 5, 8, and 10 of the '760 patent. (D.I. 11 at 4)[1] Independent claim 1 recites:

---

[1] In its motion to dismiss, LinkedIn asserts that "there is no meaningful difference between the asserted claims and unasserted claims for purposes of invalidity under Section 101" and, therefore, requests the Court hold all claims invalid. (*See* D.I. 13 at 3 n.1) DiStefano responds that the unasserted claims are not part of this action and further, the asserted claims are directed to a method, whereas the unasserted claims are directed to a computer hardware system. (D.I. 16 at 7 n.1) The Court agrees with DiStefano that the unasserted claims are not a part of this action and thus, the Court's analysis is limited to the asserted claims. *See Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1193 (Fed. Cir. 2014) ("The scope of any judgment should conform to the issues that were actually litigated."); *see also Uniloc USA, Inc. v. ADP, LLC*, 279 F. Supp. 3d 736, 741 (E.D. Tex. 2017) (declining to consider invalidity of unasserted claims).

1

**1.** A method, within and by a computer hardware system that is configured to serve a first web page associated with a first user and a second web page associated with a second user, comprising:

> receiving, from a first computer associated with the first user, a first indication to opt into a reciprocal linking arrangement;
>
> receiving, from a second computer associated with the second user, a second indication to opt into the reciprocal linking arrangement;
>
> establishing, within a database associated with the computer hardware system, the reciprocal linking arrangement based upon both the first and second users opting to participate in the reciprocal linking arrangement;
>
> including, within the second web page and based upon the reciprocal linking arrangement, a second functional identification element associated with the first entity; and
>
> including, within the first web page and based upon the reciprocal linking arrangement, a first functional identification element associated with the second entity, wherein
>
> the second functional identification element includes a link to the first web page, and
>
> the first functional identification element includes a link to the second web page.

The remaining asserted claims all depend from claim 1. During oral argument, the parties agreed that claim 1 is representative. (*See* Tr. at 4 ("[C]laim 1 is representative."), 50 ("[T]his case could rise or fall on claim 1 as to the asserted claims."))[2]

---

[2] "The asserted dependent claims – 4, 5, 8, and 10 – add the following limitations: (4) a third party requesting the first web page and having the web page provided to it; (5) the 'first web page' including 'one or more web pages'; (8) providing the first user a plurality of recommended web pages; and (10) the 'second functional identification element' including an 'image.'" (D.I. 13 at 3)

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

### B. Patentable Subject Matter

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." There are three exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). "Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), the Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). First, courts must determine if the claims at issue are directed to a patent-ineligible concept ("step

4

one"). *See id.* If so, the next step is to look for an "'inventive concept' – i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself" ("step two"). *Id.* The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

At step one, "the claims are considered in their entirety to ascertain whether their character ***as a whole*** is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (emphasis added); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("*Affinity Labs I*") (stating first step "calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter").

In conducting the step one analysis, courts should not "oversimplif[y]" key inventive concepts or "downplay" an invention's benefits. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337-38 (Fed. Cir. 2016); *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("[C]ourts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims.") (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)).

At step two, courts must "look to both the claim as a whole and the individual claim elements to determine whether the claims contain an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *McRo*, 837 F.3d at 1312 (internal brackets and quotation marks omitted). The "standard" step two inquiry includes consideration of whether claim elements

5

"simply recite 'well-understood, routine, conventional activit[ies].'" *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2359). "Simply appending conventional steps, specified at a high level of generality, [is] not **enough** to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (internal quotation marks omitted; emphasis in original).

However, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350. In *Bascom*, the Federal Circuit held that "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself," but nonetheless determined that an **ordered combination** of these limitations was patent-eligible under step two. *Id.* at 1349.

The Federal Circuit recently elaborated on the step two standard, stating that "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1368; *see also Aatrix*, 882 F.3d at 1128 ("While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination."); *Automated Tracking*, 2018 WL 935455, at *5 ("We have held that 'whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact.'") (quoting *Berkheimer*, 881 F.3d at 1368).

"Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Berkheimer*, 881 F.3d at 1369; *see also Exergen*, 2018 WL 1193529, at *4 ("Something is not well-understood, routine, and conventional merely because it is disclosed in a prior art reference. There are many obscure references that nonetheless qualify as prior art."). Still, "[w]hen there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, [and] conventional to a skilled artisan in the relevant field, this issue can be decided on summary judgment as a matter of law." *Id.*

As part of the step two "inventive concept" inquiry, the Federal Circuit has looked to the claims as well as the specification. *See Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) ("*Affinity Labs II*") ("[N]either the claim nor the specification reveals any concrete way of employing a customized user interface."). Still, it is not enough just to disclose the improvement in the specification; instead, the Court's task becomes to "analyze the asserted claims and determine whether they ***capture these improvements***." *Berkheimer*, 881 F.3d at 1369 (emphasis added). In other words, "[t]o save a patent at step two, an inventive concept must be ***evident in the claims***." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (emphasis added); *see also Alice*, 134 S. Ct. at 2357 ("[W]e must examine the ***elements of the claim*** to determine whether it contains an 'inventive concept.'") (emphasis added); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").

At both steps one and two, it is often useful for the Court to compare the claims at issue

7

with claims that have been considered in the now considerably large body of decisions applying § 101. *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016).

Finally, as a procedural matter, the Federal Circuit has observed frequently that § 101 disputes may be amenable to resolution on motions for judgment on the pleadings, motions to dismiss, or summary judgment. *See, e.g.*, *Berkheimer*, 881 F.3d at 1368 ("Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts. Patent eligibility has in many cases been ***resolved on motions to dismiss or summary judgment. Nothing in this decision should be viewed as casting doubt on the propriety of those cases.*** When there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, this issue can be decided on summary judgment as a matter of law.") (emphasis added); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351-52 (Fed. Cir. 2014) (affirming grant of Rule 12(c) motion for judgment on pleadings for lack of patentable subject matter); *Intellectual Ventures I LLC v. Symantec Corp.*, 2018 WL 1324863, at *1 n.1 (Fed. Cir. Mar. 15, 2018) (affirming grant of summary judgment of patent ineligibility and stating *Berkheimer* "does not compel a different conclusion").

### III. DISCUSSION

LinkedIn contends that the claims of the '760 patent are ineligible under § 101 because they are directed to the abstract idea of facilitating cross-marketing relationships and fail to add any inventive concept, even when considered as an ordered combination. (*See* D.I. 13 at 5; *see also* Tr. at 15-16) DiStefano responds that the patent recites non-abstract, particularized methods of web design and hosting that improve "an already computerized field of web page

8

development," making web development "easier for everyone," including those with and without technical knowledge. (Tr. at 26-28) DiStefano further contends that the ordered combination of the claim elements recites an inventive concept. (*See* D.I. 16 at 1, 7, 13-14) The Court addresses each argument in turn.

**A.     Step One**

At step one of the *Alice/Mayo* test, the question is whether the asserted claims are directed to a patent-ineligible concept. "[A]ll inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 132 S. Ct. at 1293. Thus, "an invention is not rendered ineligible for patent simply because it involves" a patent-ineligible concept. *Alice*, 134 S. Ct. at 2354. "Indeed, to preclude the patenting of an invention simply because it touches on something natural would 'eviscerate patent law.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed Cir. 2016) (quoting *Mayo*, 132 S. Ct. at 1293). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; we must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Id.*

Here, the Court agrees with LinkedIn that the asserted claims of the '760 patent are directed to the abstract idea of facilitating cross-marketing relationships. In broad terms, the method of claim 1 comprises two users on two computers opting into a reciprocal linking arrangement and then, through use of a computer database, establishing the reciprocal linking arrangements between the two users such that a link to the first page appears on the second and a link to the second page appears on the first. *See* '760 pat. at cl. 1. As LinkedIn explains, this method "is not essentially different from reciprocal marketing relationships formed between two

9

brick and mortar stores selling complementary products." (D.I. 13 at 6) Rather than improving any technical problem in the prior art, the patent "relate[s] to . . . marketing problems or dealing with the hassle of matchmaking." (Tr. at 12; *see also* '760 Pat. at 4:20-25 ("The present invention further relates to an internet-based system for assisting a website designer . . . in order to market the first website at the second website."); Tr. at 18 ("[I]t may be difficult for novice web designers to arrange those relationships; but those aren't technical problems, those are marketing problems."); *id.* at 19 ("[A]voiding the hassle of having to interact with the web designer also is not a technical problem."))

DiStefano contends that LinkedIn oversimplifies the invention because the claims teach "transport[ing] the user instantly to the linked website," an invention not (at least yet) realistic in the real-world because the third-party agent would have to "port the physical storefronts . . . *into* its own establishment." (D.I. 16 at 8-9) But simply because the invention has no direct physical corollary does not render the claims patent-eligible, as DiStefano acknowledges. (Tr. at 30-31)[3]

In *Alice*, the Supreme Court found claims directed to a method of "facilitat[ing] the exchange of financial obligations between two parties by using a computer system as a third-party intermediary" unpatentable. *Alice*, 134 S. Ct. at 2352; *see also Bilski v. Kappos*, 561 U.S. 593, 611 (2010) (finding patent claims directed to contractual relationship for "a fundamental economic practice long prevalent in our system of commerce"). The claims at issue here similarly recite a method of facilitating relationships between two parties through a computer system intermediary. This common marketing tactic does not become patent-eligible simply

---

[3]Moreover, there *is* a corollary to the '760 patent in the physical world: seeing an advertisement at one storefront for a second storefront and then visiting the second storefront via any mode of transportation (albeit not instantly).

through computer implementation. *See Alice*, 134 S. Ct. at 2357 ("[M]erely requiring generic computer implementation fails to transform that abstract idea into a patent-eligible invention."); *see also buySAFE*, 765 F.3d at 1355 ("The claims are squarely about creating a contractual relationship [and their] invocation of computers adds no inventive concept."); *VideoShare, LLC v. Google, Inc.*, 2016 WL 4137524, at *6 (D. Del. Aug. 2, 2016), aff'd, 695 F. App'x 577 (Fed. Cir. 2017) ("[C]laims overcom[ing] the burden of manually posting a link associated with a video to a web page by automating this process [are directed to an abstract idea because they] are not directed to an improvement in computer functionality, and the physical components of the claim merely provide a generic environment for carrying out the abstract idea.").

Accordingly, the Court finds the asserted patent claims abstract under *Alice* step one.[4]

**B. Step Two**

At step two, the Court looks at "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355; *see also Mayo*, 566 U.S. at 73 (explaining that steps of claim must amount to more than "well-understood, routine, conventional activity"). "To save a patent at step two, an inventive concept must be ***evident in***

---

[4]LinkedIn submitted a notice of subsequent authority on September 14, pursuant to D. Del. LR 7.2(b), directing the Court to a recent "Final Rejection of certain claims in United States Patent Application No. 13/946,461," which claims priority to the same patent application and inventor as the '760 patent and shares many similarities. (D.I. 26) This is relevant, LinkedIn argues, because claims in this recent application were rejected under 35 U.S.C. § 101. (*Id.*) In response, DiStefano argues that "[t]he cited examiner arguments can be overcome by subsequent arguments or amendments submitted by the applicant, and are not the type of authority properly submitted pursuant to Local Rule 7.1.2(b)." (D.I. 27 at 1-2) The subsequent authority has played no part in the Court's conclusion that the asserted claims of the '760 patent are ineligible under Section 101.

*the claims.*" *RecogniCorp*, 855 F.3d at 1327 (emphasis added); *Alice*, 134 S.Ct. at 2357 ("[W]e must examine the *elements of the claim* to determine whether it contains an 'inventive concept.'") (emphasis added).

Claim 1 is directed to the method of facilitating cross-linking relationships by establishing reciprocal arrangements. Not only does the specification acknowledge that using reciprocal links on web pages was "very common" in the prior art, *see* '760 Pat. at 2:43-49; *see also id.* at 5:52-54 ("[T]he preferred system . . . includes a server computer . . . operably connected to the internet . . . using standard techniques well-known in the art."), but, more importantly, the claims are silent as to any manner in which the improvement actually functions and instead, only claim the desired result. *See* '760 Pat. at cl. 1 (claiming method steps of "receiving . . . a first [or second] indication to opt into a reciprocal linking arrangement," "establishing, within a database . . . the reciprocal linking arrangement" based on the users opting in, and "including . . . a first [or second] functional identification element" within each web page). Nowhere do the claims (or specification) explain how opt-ins are received, how the database works or what type of database is actually used, or how links and identification elements are created or added to the web pages.

Similarly, while the specification recognizes that creating such links in the prior art was "not always easy" and could be difficult without contractual arrangements, *see id.* at 3:49-54, the claims do not explain how the claimed system makes the creation of links any easier. Instead, the claims broadly direct that users opt into using the system and then the system establishes the linking arrangement. These conventional steps of opting into a reciprocal linking arrangement, establishing the reciprocal linking arrangement in a computer database, and including links on the reciprocal web pages, considered alone or as an ordered combination, fail to render the claims

patent-eligible. *See buySAFE*, 765 F.3d at 1355 (finding claims directed to "familiar commercial arrangements by use of computers and networks" ineligible for patenting).

DiStefano contends a factual dispute exists regarding whether the ordered combination of steps is routine and conventional, but given its multiple concessions during oral argument – including that the method involves all conventional elements present in the prior art and that the claimed method is simply an automation of already-established steps – and its failure to identify any reason to find the ordered combination non-routine, the Court sees no reason to conclude that the method steps, considered alone or in combination, are anything but routine and conventional. (*See* Tr. at 40 ("The patent concedes that all of the individual components, at least those that are at issue here, are conventional components. There is no doubt about that. We don't contest it."); *id.* at 47 ("'[C]reating reciprocal links on web pages' was well known in the prior art."); *id.* at 48 ("[P]rior art processes accomplish the same result."))[5]

Finally, DiStefano contends factual allegations in the First Amended Complaint support the finding of an inventive concept. (*See* Tr. at 36-37; D.I. 16 at 10-11) The First Amended Complaint alleges that the claims of the '760 patent "resolve technical problems related to a streamlined process for developing web pages and posting those web pages on the internet." (D.I. 11 at 3) As addressed earlier, however, the asserted claims do not describe with any detail how to create web pages or create links on a web page, or provide any details surrounding the database associated with the computer hardware system. The remaining relevant allegations in the First Amended Complaint broadly assert that the claims "recite one or more inventive

---

[5]During oral argument, DiStefano conceded that no claim construction disputes preclude the Court's ruling on LinkedIn's motion. (*See* Tr. at 49-50) ("[T]he real heart of the issue here is not one of claim construction.")

13

concepts" and "recite an invention that is not merely routine or conventional [and] does not preempt all ways of . . . establish[ing] reciprocal linking arrangements between web pages." (*Id.*) Each of these allegations, however, merely recites a boilerplate legal conclusion without any supporting facts in the remaining sections of the complaint, in the specification, or in the claims.[6]

## IV. CONCLUSION

For the reasons stated above, the Court will grant LinkedIn's motion to dismiss. An order follows.

---

[6]While DiStefano faults LinkedIn for failing to separately address preemption (*see* D.I. 16 at 11), Federal Circuit precedent explains that "where a patent's claims are deemed only to disclose patent ineligible subject matter under the *Alice* framework, as they are in this case, preemption concerns are fully addressed and made moot." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 879 F.3d 1329, 1339 (Fed. Cir. 2017).